UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHAWN SCHOUEST                                CIVIL ACTION
VERSUS                                        NO: 13-6806
MARSH BUGGIES, INC., ET AL.                   SECTION: "S" (1)

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Marsh Buggies, Inc.'s Motion for Summary Judgment (Doc. #24) is **DENIED**.

### BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendant, Marsh Buggies, Inc.[1] Marsh Buggies argues that plaintiff's claims against it should be dismissed because the marsh excavators on which plaintiff worked were not a vessels, and plaintiff was not a Jones Act seaman.

Plaintiff, Shawn Schouest, filed this action against Marsh Buggies in the Twenty-Fifth Judicial District Court, Parish of Plaquemines, State of Louisiana alleging claims under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), for injuries he allegedly sustained while working for Marsh Buggies. Schouest alleges that on October 23, 2012, he was employed by Marsh Buggies as a driver of their equipment, and that he was injured while "performing maintenance on a Marsh Buggy when the chain securing the Marsh Buggy failed and struck him on the wrist causing him to sustain painful and serious injuries."

Marsh Buggies removed the action to the United States District Court for the Eastern District of Louisiana alleging federal question subject matter jurisdiction. Thereafter, Schouest filed an

---

[1] Plaintiff also named American Interstate Insurance Company as a defendant, but his claims against it were dismissed on November 26, 2014.

amended complaint seeking damages under the Jones Act and general maritime law, and he dismissed his claims brought under 33 U.S.C. § 905(b). Marsh Buggies filed a motion for summary judgment arguing that the marsh excavators on which Schouest worked were not vessels, and that Schouest was not a seaman.

## ANALYSIS

**A.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla

of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.     Schouest's Claims**

Schouest brings claims against Marsh Buggies under the Jones Act and the general maritime law doctrine of unseaworthiness. The Jones Act provides a cause of action for a "seaman" who is injured in the course of his employment. 46 U.S.C. § 30104. The test for determining whether an employee is a seaman under the Jones Act is twofold: (1) the employee's duties must "contribute to the function of the vessel or to the accomplishment of its mission"; and, (2) the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." Chandris, Inc. v. Latsis, 115 S.Ct. 2172, 2189-90 (1995). "The relevant question is whether in the course of his current job, he substantially contributes to the vessels' functions and maintains a substantial connection with the fleet." Naquin v. Elevating Boats, L.L.C., 744 F.3d 927, 933 (5th Cir. 2014) (citations omitted).

"[L]iability based upon unseaworthiness is wholly distinct from liability" under the Jones Act. Usner v. Luckenback Overseas Corp., 91 S.Ct. 514, 517 (1971). To establish a claim for unseaworthiness under the general maritime law, a plaintiff must prove "that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purpose for which it is used." Jackson v. OMI Corp., 245 F.3d 525, 527 (5th Cir. 2001). Thus, both

of Schouest's claims against Marsh Buggies depend on whether the marsh excavators on which he worked are "vessels."

The definition of "vessel" includes "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3. "The determination of whether a given craft is a vessel is ordinarily resolved as a matter of law," but "at the margin, fact issues may be present." Manuel v. P.A.W. Drilling & Well Serv., Inc., 135 F.3d 344, 347 (5th Cir. 1998) (citing Ducote v. V. Keeler & Co., Inc., 953 F.2d 1000, 1002 (5th Cir. 1992) ("marginal claims are properly left for jury determination"); Gremillon v. Gulf Coast Catering Co., 904 F.2d 290, 292 (5th Cir. 1990); Bernard v. Binnings Constr. Co., Inc., 741 F.2d 824, 829 (5th Cir. 1984)).

In Lozman v. City of Riviera Beach, FL, 133 S.Ct. 735, 740-41 (2013), the Supreme Court of the United States emphasized that "[n]ot *every* floating structure is a 'vessel[,]'" and that the statutory definition codified at 1 U.S.C. § 3 "applies to an 'artificial contrivance . . . capable of being used . . . *as a means of transportation on water*.'" The Court cited the meaning of "transportation" as involving the 'conveyance (of things or persons) from one place to another[,]" and noted that this definition must be applied "in a 'practical,' not 'theoretical,' way." Id. at 741 (citations omitted). The Court held that "a structure does not fall within the scope of this statutory phrase unless a reasonable observer, looking at the [floating structure's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." Id.

In this case, Marsh Buggies has submitted the affidavit of Gary Rodriguez to provide information relevant to the marsh excavator's potential status as a vessel. Rodriguez has been employed at Marsh Buggies for 45 years, 35 years of which have been as a shop foreman. He was

Schouest's supervisor, and is familiar with the marsh excavators on which Schouest worked. Rodriguez attested to the following characteristics of the marsh excavators:

- They are excavating equipment that Marsh Buggies placed on pontoons and tracking;

- They do not have any sort of bow;

- They are capable of floating, but have limited mobility and minimal steering capacity in water, instead the pontoons and tracking must guide the equipment;

- They have no means of self-propulsion while floating and must be pushed and steered by a support vessel if there is any current or wind;

- Their operation is limited to land and marsh-like areas in shallow, calm water that cannot be reached by traditional land excavating equipment or a work barge;

- Their excavating function cannot be used unless they are grounded in three feet of water or less.

Further, the documents outlining the marsh excavators' specifications and characteristics that were attached as exhibits to Rodriguez's affidavit describe the marsh excavators as "amphibious," and state that they can move at one-mile-per-hour in water. The documents also state that the marsh excavators can be split into three pieces, and that the pontoons are designed to fit in shipping containers for "practical transport and shipping across the globe."

Schouest argues that there are contested issues of material fact that prevent a determination of whether the marsh excavators are vessels. Schouest submitted his own affidavit in which he attests that the marsh excavators operated on land and water; that he has operated them in the Gulf of Mexico; that they are "routinely used on water in transportation and in work operations"; are self-propelled and steered by the track system and boom crane; and, that they "can and have been used in deep water." Schouest also states that he "was encouraged to obtain" a Transportation Worker Identification Credential for the United States Coast Guard because such credentials are required

5

for some jobs. He cites Dune Energy, Inc. v. FROGCO Amphibious Equip., LLC, 2013 WL 1856058, at *5 (E.D. La. 4/30/2013) (Fallon, J.), in which the district court concluded that it could not determine on summary judgment with the evidence presented whether a marsh buggy was a vessel under the Lozman test. The court noted that the "marsh buggy excavator seems to have a steering mechanism and was apparently capable of self-propulsion," but that there was an insufficient factual record to make a final determining of whether it actually qualified as a vessel under Lozman, because the affidavit submitted regarding its characteristics and activities included "only conclusory assertions regarding the marsh buggy's characteristics and activities."[2] Id.

In this case, there are disputed issues of material fact regarding the marsh excavators' characteristics that prevent a determination on summary judgment of whether they are vessels. Rodriguez's affidavit states that the marsh excavators have no bow, are designed to be amphibious, and have limited means of propulsion in water. The materials attached to his affidavit state that the marsh excavators can move at one-mile-per-hour over water, and that they have "extra high flotation giving more versatility and safer water operation." Schouest states in his affidavit that the marsh excavators could be used in deeper water, and that he has so used them.

When considering whether "a reasonable observer, looking at the [floating structure's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water," the Court in Lozeman, particularly examined whether the floating structure had a means of self-propulsion. Lozeman, 133 S.Ct. at 741-43. The Court noted that "[a]lthough lack of self-propulsion is not dispositive, it may be a relevant characteristic." Id. at 741

---

[2] The affidavit stated the weight of the equipment, and that it was "not constructed or adapted to carry oil or hazardous material in bulk as cargo or cargo residue"; and, that it was "constructed, designed, used and capable of being a means of transportation on water."

(citations omitted).   Here, there are disputed issues of fact regarding the marsh excavators' capability of self-propulsion on water that impact whether a reasonable observer would consider them designed to a practical degree for carrying people and things over water.  Therefore, Marsh Buggies' motion for summary judgment is DENIED.[3]

## CONCLUSION

**IT IS HEREBY ORDERED** that Marsh Buggies, Inc.'s Motion for Summary Judgment (Doc. #24) is **DENIED**.

New Orleans, Louisiana, this  29th  day of January, 2015.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**

---

[3] Marsh Buggies asks this court to assume that the marsh excavators are vessels and find that Schouest was not a seaman because he did not spend thirty-percent of his time working on navigable waters. Because vessel status is central to Schouest's claims under both the Jones Act and the general maritime law doctrine of unseaworthiness, this court will not make that assumption.